UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JAMIEN DEMON NICKERSON,          § | |
|     PETITIONER,          § | |
| § | |
| v.          § | Civil Action No. 4:05-CV-0738-Y |
| § | |
| DOUGLAS DRETKE, DIRECTOR,          § | |
| TEXAS DEPARTMENT OF CRIMINAL          § | |
| JUSTICE, CORRECTIONAL INSTITUTIONS          § | |
| DIVISION,          § | |
|     RESPONDENT.          § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**I. FINDINGS AND CONCLUSIONS**

**A.     NATURE OF THE CASE**

This is a petition for writ of habeas corpus by a state prisoner pursuant to 28 U.S.C. § 2254.

**B.     PARTIES**

Petitioner Jamien Demon Nickerson, TDCJ-ID #1136122, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Rosharon, Texas.

Respondent Douglas Dretke is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

**C.     FACTUAL AND PROCEDURAL HISTORY**

In March 2001, Nickerson was indicted for capital murder in the 372nd District Court of Tarrant County, Texas, Case No. 0791370A. (State Habeas R. at 38.) On November 8, 2002, a jury found Nickerson guilty of the offense, and the trial court assessed an automatic life sentence. (*Id.* at 39.) Testimony at trial reflected that on Thanksgiving afternoon of 2000, Nickerson and two of his friends Derrick Hornsby and Patrick Woodard drove around areas of Fort Worth looking for an automobile to steal and strip the valuable parts from. (4Reporter's R. at 31, 82.) They carried an AK-47 rifle in the car. (*Id.*) Because they did not feel it was a good time to do it without being seen, they did nothing. (*Id.* at 32.) Later that night, after Hornsby left his girlfriend's apartment, he saw a Camero automobile with new rims and tires parked at a pay phone at a car wash at the intersection of Rosedale and Nashville Streets in Fort Worth. (*Id.* at 35, 115.) He went to Woodard's house and told Nickerson and Woodard about the Camero. (*Id.* at 35-37, 174-75; 6Reporter's R. at 17-18.) Nickerson grabbed a mask and the rifle and left with Hornsby. (4Reporter's R. at 37-38, 174-75, 184; 6Reporter's R. at 19.) At the car wash, Hornsby dropped Nickerson off and drove around the block. (4Reporter's R. at 39.) Nickerson approached the Camero and shot the driver, Juan Lerma, in the face. (*Id.* 40-41, 157, 177.) Hornsby returned, and Nickerson threw the gun in the back seat of Hornsby's car. (*Id.* at 41.) Nickerson told Hornsby that he was going back to get the Camero. (*Id.*) Nickerson dumped Lerma's body in the parking lot of the car wash and drove the Camero away. (*Id.* at 134.)

Nickerson returned to Woodard's house and parked the Camero in the backyard, where the car was stripped. (*Id.* at 43; 5Reporter's R. at 15, 34-35, 61, 78.) Nickerson tried to burn the clothes he was wearing in the barbeque pit. (*Id.* at 25.) He told his girlfriend, Edwanna Williams, to put his coat in cold water. (6Reporter's R. at 20-21.) When she put the coat in the cold water, she saw

2

blood. (*Id.* at 21-22.) Nickerson told Williams that he asked Lerma for money and that Lerma handed him some money out the window. (*Id.* at 24.) He told her that he then told Lerma to get out of the car and that Lerma started moving his hands around in the car. (*Id.* at 24-25.) He told her that at that point he shot Lerma and pulled him out of the car. (*Id.*) Nickerson told Woodard's girlfriend, Misty Rice, that he had to do what he had to do because he and his girlfriend were living on the street. (4Reporter's R. at 181.) The next morning, Nickerson and Woodard moved the car to the backyard of a vacant house, and Nickerson poured motor oil on the car. (6Reporter's R. at 29.) Hornsby, as well as two other state witnesses, Christine Smith, and Edwanna Williams, entered into plea agreements with the state in exchange for their testimony at trial. (*Id.* at 45, 70-73, 106-08; Trial Court Clerk's R. at 18-18F .) Only Hornsby and Williams, however, testified at Nickerson's trial.

Nickerson appealed his conviction, but the Second District Court of Texas affirmed the trial court's judgment on December 4, 2003. *Nickerson v. Texas*, No. 2-02-453-CR (Tex. App.–Fort Worth Dec. 4, 2003) (not designated for publication). On June 30, 2004, the Texas Court of Criminal Appeals refused Nickerson's petition for discretionary review. *Nickerson v. Texas*, PDR, No. 456-04. Nickerson also filed a state application for writ of habeas corpus, which was denied without written order by the Texas Court of Criminal Appeals on September 21, 2005. *Ex parte Nickerson*, Application No. WR-62,449-01. This federal petition was filed on November 21, 2005.

**D.    RULE 5 STATEMENT**

Dretke admits that Nickerson has sufficiently exhausted his state remedies as required by 28 U.S.C. § 2254(b). (Resp't Answer at 5.)

**E.    ISSUES**

In two grounds, Nickerson contends: (1) the trial court erred by failing to instruct the jury on a lesser included offense, and (2) he received ineffective assistance of trial and appellate counsel. (Petition at 7; Pet'r Memorandum at 1-9.)

**F.     LEGAL ANALYSIS**

   **1.  Standard of Review**

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. This presumption applies to both express findings of fact and those unarticulated findings necessary to the state court's conclusions of mixed

law and fact. *Valdez v. Dretke*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

**2. Lesser Included Offense Instruction**

Nickerson claims that because this was a capital case, the trial court should have given a lesser included offense instruction on murder, aggravated robbery and/or robbery. (Pet'r Memorandum at 1-3.) In *Beck v. Alabama*, 447 U.S. 625, 637 (1980), the Supreme Court held that a lesser included offense charge is constitutionally required in capital cases when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense but leaves some doubt with respect to an element that would justify conviction of a capital offense. A defendant is entitled to the instruction if the jury could rationally acquit the defendant on the capital crime and convict on the noncapital crime. *See Cordova v. Lynaugh*, 838 F.2d 764, 767 (5th Cir. 1998).[1]

Here, the state did not seek the death penalty. (Trial Court Clerk's R. at 254.) Thus, for *Beck* purposes, the case is treated as a noncapital case. *See Creel v. Johnson*, 162 F.3d 385, 390 (5th Cir. 1998). In a noncapital murder case, the failure to give an instruction on a lesser included

---

[1] Texas law is consistent with the federal constitutional rule. In Texas, the courts apply a two prong test to decide whether a defendant is entitled to a lesser included offense charge. *See Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). The first requirement is that the lesser included offense must be included within the proof necessary to establish the offense charged. *Id.* at 672. The second prong requires that some evidence must exist in the record that if the defendant is guilty, he is guilty only of the lesser offense. *Id.*

offense does not raise a federal constitutional issue. *See Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988); *Alexander v. McCotter*, 775 F.2d 595, 601 (5th Cir. 1985).

### 3. Ineffective Assistance of Counsel

Nickerson claims he received ineffective assistance of counsel at trial and on appeal. He asserts trial counsel was ineffective because counsel (1) failed to request a lesser included offense instruction, (2) failed to investigate the scene of the offense and relied solely on the state's file, (3) opened the door concerning plea bargains between the state and it's witnesses, (4) failed to reveal to the jury the negative results from the DNA testing conducted by the state, which would have cleared him totally of crime, or, at worst, would have entitled him to a lesser included offense instruction, (5) labored under an actual conflict of interest that affected his performance. (Pet'r Memorandum at 3-9.) Nickerson asserts appellate counsel was ineffective by failing to raise clear reversible errors, instead of a frivolous brief. (*Id.* at 9.)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the standards set forth in *Strickland v. Washington*. *Strickland*, 466 U.S. at 668. *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Strategic choices made by counsel after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Id.* at 690.

Nickerson asserted his ineffective assistance claims in his state habeas application, however, the Texas Court of Criminal Appeals denied the application without express findings of fact or written order. *Ex parte Nickerson*, Application No. WR-62,449-01, at cover. As previously noted, this constitutes an adjudication on the merits by the Texas Court of Criminal Appeals and is entitled to the presumption of correctness. *See Neal*, 286 F.3d at 235. Furthermore, under these circumstances, a federal court may assume that the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and imply fact findings consistent with the state court's disposition. *Townsend v. Sain*, 372 U.S. 293, 314 (1963)[2]; *Catalan v. Dretke*, 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez*, 274 F.3d at 948 n.11; *Goodwin v. Johnson*, 132 F.3d 162, 183 (5th Cir. 1997). Thus, we defer to the state court's adjudication of the claims presented unless the state court's decision was: (1) contrary to or involved an unreasonable application of *Strickland*, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the state court proceedings. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Pondexter v. Dretke*, 346 F.3d 142,148-49th Cir. 2003); *Haynes v. Cain*,

---

[2]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

298 F.3d 375, 379-82 (5th Cir. 2002); *Foster v. Johnson*, 293 F.3d 766, 777 (5th Cir. 2002); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001). Having independently reviewed each of Nickerson's ineffective assistance claims in conjunction with the state court records, it does not appear that the state court's application of *Strickland*'s attorney-performance standard was objectively unreasonable. *See Bell*, 535 U.S. at 698.   Nickerson claims counsel was ineffective by failing to request an instruction on the lesser included offenses of murder, aggravated robbery and/or robbery because "the indictment included [the] lessor-included offenses." (Pet'r Memorandum at 5.) Under state law, to be entitled to a lesser included offense instruction requires that (1) the lesser included offense be included within the proof necessary to establish the offense charged, and (2) some evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser included offense. *See Hayward v. State*, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005); *Jacob v. State*, 892 S.W.2d 905, 907 (Tex. Crim. App. 1995). *See also* TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981). Both prongs of the test must be met. *See Arevalo v. State*, 943 S.W.2d 887, 890 (Tex. Crim. App. 1997).

Assuming, without deciding, that murder, aggravated robbery and robbery are lesser included offenses of capital murder under Texas law, Nickerson did not testify at trial and has failed to direct the court's attention to any evidence in the record that would support a verdict of only one of the lesser offenses. His bald assertion that a lesser offense instruction was warranted is insufficient to earn him habeas relief. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (conclusional allegations insufficient to warrant § 2254 relief). As Nickerson cannot show that he was entitled to a lesser included offense instruction, he fails to demonstrate that counsel was ineffective for failing to request such an instruction. Furthermore, Nickerson's defensive strategy was that he was

8

innocent of the crime and that the state's witnesses implicated him in the murder to protect Woodard. Thus, a lesser included offense instruction would have been inconsistent with the defensive theory that Nickerson was innocent.

Nickerson claims counsel was ineffective by failing to investigate the crime scene and interview the state's witnesses before trial. (Pet'r Memorandum at 6.) While it is true that an attorney must engage in a reasonable amount of pretrial investigation, the record is silent as to the nature and extent of counsel's investigation into the facts and circumstances of Nickerson's case. *See Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994). Nevertheless, Nickerson altogether fails to state with specificity what a more thorough investigation would have revealed and how it would have altered the outcome of the trial or to show the state's witnesses were available and would have agreed to be questioned by counsel beforehand. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Nor has Nickerson demonstrated that the result of his trial would have been different had counsel conducted a more thorough investigation or interviewed the state's witnesses sooner by showing that he was precluded from pursuing a different, more viable defensive strategy than that taken by counsel. *Id.* at 1002-03. Nickerson's unsubstantiated allegations are insufficient to support an ineffective assistance claim. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

Nickerson claims counsel was ineffective by opening the door to testimony regarding plea bargains between the state and Hornsby, Christine Smith, and Edwanna Williams. (Pet'r Memorandum at 6-7.) Ordinarily, under state law, the disposition of the case against a codefendant is not admissible in the trial of another codefendant. *See Rodriguez v. State*, 552 S.W.2d 451, 454-55 (Tex. Crim. App. 1977). A codefendant's plea cannot be used to establish the guilt of the defendant. However, evidence that a witness who testifies against the accused has pending criminal

9

charges against him, or is waiting sentencing, as here, is admissible to show a possible motive for testifying for the state and against the accused. *See Miller v. State*, 741 S.W.2d 382, 389 (Tex. Crim. App. 1987). Nickerson claims his counsel opened the door to the plea-bargain evidence, however, the record reveals that the state prosecutor questioned Hornsby and Williams first regarding the existence of their respective plea bargain agreements, and that Nickerson's counsel merely cross-examined the witnesses on the topic. (4Reporter's R. at 45; 6Reporter's R. at 37, 55.) In any event, the evidence was admissible as a matter of state law, and no deficient performance is evident on the part of Nickerson's counsel. It was sound trial strategy for counsel to use the evidence to show a motive for Hornsby and Williams to testify falsely against Nickerson.

Nickerson claims counsel was ineffective by failing to reveal to the jury the negative results of the DNA testing conducted by the state. (Pet'r Memorandum at 7-8.) Before trial, the state filed a DNA test report stating that the victim could not be excluded as a possible contributor of the blood found on the jacket worn during commission of the offense, but that no conclusion could be made regarding Jamien Nickerson as a possible contributor. (Clerk's R. at 254-57.) According to Nickerson, revealing this evidence would have all but destroyed the state's version of the events and would have created a reasonable doubt in the minds of the jurors. (Pet'r Memorandum at 8.) However, the fact that Nickerson's blood was not present on the jacket does not, as Nickerson contends, clearly show he did not participate in the crime. (*Id.* at 7.) There was evidence that he wore the jacket on the night in question and that he told Williams to wash the jacket when he returned to Woodard's house. Furthermore, Nickerson has not shown that but for counsel's omission, a reasonable probability exists that the result of his trial would have been different. The state presented overwhelming evidence of Nickerson's involvement in the offense. *See Glover v.*

10

*United States*, 531 U.S. 198, 200 (2001); *Johnson v. Dretke*, 301 F.3d 234, 239 (5th Cir. 2002); *Spriggs v. Collin*, 993 F.2d 85, 88 (5th Cir.1993).

Nickerson claims counsel labored under an actual conflict of interest because counsel's wife was an assistant district attorney for Tarrant County and because he supplied his own AK-47 for the state to use as demonstrative evidence. (Pet'r Memorandum at 8-9.) Nickerson knowingly and intelligently waived the first potential conflict both in writing and verbally. (Clerk's R. at 78; 2Reporter's R. at 19-23.) *See United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975). As to the second, Nickerson has failed to establish how the fact that counsel allowed the state to use his own AK-47 for demonstrative purposes adversely affected counsel's representation of Nickerson or had any probable effect upon the trial's outcome. *See Mickens v. Taylor*, 535 U.S. 162, 166 (2002).

Nickerson claims his appellate counsel was ineffective by raising frivolous errors, instead of clearly reversible errors. (Pet'r Memorandum at 9.) Appellate counsel is not required to raise every conceivable argument urged by his client on appeal, regardless of merit. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical approach taken. *Jones v. Barnes*, 463 U.S. 745, 749 (1983). The question is whether Nickerson has shown that counsel's failure to raise an issue worked to his prejudice–i.e., that but for counsel's error he would have prevailed on his appeal.[3] *Sharp v. Puckett*, 930 F.2d 450, 453 (5th Cir. 1991). Nickerson has failed to raise a meritorious claim in this petition or to allege with specificity additional claims counsel should have raised. Thus, he

---

[3]The performance component of *Strickland* need not be addressed first, and an ineffective assistance claim may be disposed of on the ground of lack of sufficient prejudice. *Robbins*, 528 U.S. at 286 n.14; *Strickland*, 466 U.S. at 697.

11

has failed to show his appeal, with reasonable probability, would have had a different outcome had counsel raised the matters presented or additional matters in Nickerson's appellate brief.

## II. RECOMMENDATION

Nickerson's petition for writ of habeas corpus should be denied.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document. The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until May 9, 2006. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(B)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV. ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until May 9, 2006, to serve and file written objections to the United States Magistrate Judge's proposed findings,

conclusions, and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April 18, 2006.

        /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE

13